UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

February 20, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Anthony G. v. Frank Bisignano, Social Security Administration*
Civil No. 8:25-cv-01841-JMC

Dear Counsel:

Anthony Gray ("Plaintiff") petitioned this Court on June 10, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 11, 13). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

I. **Procedural Background**

Plaintiff filed his current Title II application for DIB on September 9, 2021, alleging disability as of September 1, 2017.[1] (Tr. 14).[2] The SSA initially denied both applications on April 26, 2022. *Id.* Defendant affirmed its initial determination on June 5, 2023 and again upon reconsideration. *Id.* Thereafter, on July 19, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. A telephonic hearing took place on March 14, 2024. *Id.* Concluding that Plaintiff was not under disability from May 10, 2019 through June 30, 2021 (the date of last insured), ALJ Robert Ballieu denied Plaintiff's claims on July 24, 2024. *Id.* at 25. Plaintiff appealed, and the decision became final when the Appeals Council concluded there was no basis upon which to grant Plaintiff's request for review. *Id.* at 1-5.

---

[1] The instant claim is Plaintiff's second claim for SSI and DIB, as Plaintiff did not appeal the denial of his first claim. (Tr. 80). Thus, the earliest date of a possible onset is May 10, 2019. (ECF No. 8-3 at 21). The Court shall accordingly consider May 10, 2019 as the alleged onset date.

[2] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

## II.     The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity "during the period from his alleged onset date of May 10, 2019, through his date last insured of June 30, 2021." (Tr. 17). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "Wolff-Parkinson-White syndrome, atrial fibrillation, non-epileptic seizures, chronic kidney disease, diabetes mellitus, obesity, anxiety disorder, affective disorder, and post-traumatic stress disorder (PTSD)." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, the ALJ reasoned in part:

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant had moderate limitations. The claimant contended that he has limitations in concentrating generally, following instructions, and completing tasks. On the other hand, the claimant said that he could count change, drive a car, prepare his own meals, watch television, and handle his own medical care. (Exhibit B4E) Considering the record as a whole, the undersigned finds the claimant had a moderate limitation in this area.

(Tr. 18). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Function by function, the claimant remained able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours in a workday, and sit 6 hours in a workday. His ability to push and/or pull was limited to the weights given above, except not with the lower extremities. He could never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He required the need to avoid even moderate exposure to extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation, as well as all exposure to hazardous machinery and unprotected heights and the operation of motor vehicles. He could understand, remember, and apply simple instructions in jobs requiring a reasoning level of no greater than two (2). He could interact appropriately with supervisors, coworkers, and the general public. He could concentrate, persist, and maintain pace for 2 hours at a time and manage himself and adapt to routine changes in the workplace.

*Id.* at 19. Plaintiff correctly points out that to reach that decision, the ALJ summarized the medical records and Plaintiff's testimony. *Id.* at 20-22. For example, the ALJ reasoned:

> In determining the claimant's physical residual functional capacity, the undersigned is generally persuaded by the assessments of the State agency medical consultants, J. Lavin, Jr., M.D., and Robert McGuffin, Jr., M.D. After review of the record in April of 2022, Dr. Lavin opined the claimant was able to perform light level exertion except never climb ladders, ropes, or scaffolds and that he required the need to avoid even moderate exposure to hazards as a precaution due to none-epileptic seizures. (Exhibit B2A) Dr. McGuffin later reviewed the file in June of 2023 and affirmed the assessment of Dr. Lavin. (Exhibit B5A) These assessments are consistent with the residual functional capacity in the prior Administrative Law Judge decision dated May 9, 2019. (Exhibit B1A) The undersigned incorporated the assessments of Drs. Lavin and McGuffin into the residual functional capacity. However, the undersigned has reduced the claimant standing and/or walking to four hours with greater nonexertional limits secondary to lower extremity swelling, PNES precautions, and post COVID/smoking lung injury.
>
> With regard to the claimant's mental impairments, the claimant reported a chaotic childhood because of his hyperactivity. He reported having difficulty reading and writing throughout school. He said he typically earned C's in his courses. The claimant attended university where he described his performance as average. He said he studied computer technology for one year and a half before he withdrew. He said he worked as a contractor of the Navy and eventually began working in biotechnology. He reported that he ultimately stopped working in 2016 because of a heart attack. He complained that he has been denied disability benefits three times since 2016. He also reported an onset of "mood swings" and "erratic behavior" after he stopped working in 2016. He stated that he felt "angry" because of his functional limitations, e.g., inability to ride his motorcycle. (Exhibit B11F).

*Id.* at 21-22.  The ALJ also stated that:

> Overall, the record showed the claimant was a younger individual of only 48 years of age as of his alleged onset date of disability. He reported having a high school education with no history of special education. (Exhibit B2E) A review of his past work showed that he has worked in skilled jobs. (Hearing testimony) After extensive cardiologic and neurological workup the claimant was diagnosed with PNES. He was found to have a lack of worry for future seizures suggesting that his readiness for treatment for PNES was low. (Exhibit B11F) The record showed that he was also diagnosed with stage 3b chronic kidney disease and uncontrolled hypertension. As for his respiratory complaints, pulmonary function testing showed only borderline to mild findings related to infiltrative or post COVID disease. As for his mental conditions, there were multiple indications of symptom exaggeration. During the period at issue, i.e., from May 10, 2019, through his date last insured of June 30, 2021, the record contained no significant findings to support the extreme level of functional limitation alleged by the claimant. Of note, a limitation to less than a full range of light level exertion and work that is simple and routine are significant work-related limitations. The undersigned finds the residual functional capacity more than adequately considers the claimant's subjective allegations, but only those allegations that are reasonably supported by the medical evidence of record.

*Id.* at 23.  Prior to the established date of disability onset, the ALJ concluded that Plaintiff did not have past relevant work.  *Id.*

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Electrical accessory assembler, with approximately 16,000 such positions in the national economy; (2)  Merchandise marker, with approximately 132,000 such positions in the national economy; (3) Table worker, with approximately 7,500 such positions in the national economy. *Id.* at 24.  Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 10, 2019 through June 30, 2021, the date last insured.  *Id.*

### III.   Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

IV.     Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's RFC determination on several grounds: (1) that the ALJ's RFC determination is unsupported by substantial evidence because it lacks a logical explanation connecting medical facts and nonmedical evidence to each conclusion; (2) that the ALJ erroneously relied on the opinions of the State Agency physicians who evaluated Plaintiff; (3) that the ALJ failed to adequately address the vocational impact of Plaintiff's syncope; (4) that the ALJ failed to address Plaintiff's abilities to perform work-related activities eight hours per day, five days per week; (5) the ALJ erroneously evaluated Plaintiff's subjective complaints; and (6) that the ALJ failed to adequately address the intensity and persistence of Plaintiff's symptoms; (ECF No. 11). After thorough review, it will be necessary only to address the RFC determination for two of Plaintiff's stated reasons. For the reasons that follow, the ALJ's RFC determination is not supported by substantial evidence. As such, I will remand the case.

  a. The ALJ's and Appeals Council's RFC Determination is Not Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted)

5

(emphasis in original).

      i.      *The ALJ Improperly Determined Plaintiff's RFC*

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff correctly points out that in determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Id.* Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Id.* A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements. *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636. Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

As an initial matter, it is well taken that much of the ALJ's RFC analysis is based on a summary recitation of the medical records and certain portions of the testimony. Tr. 19. Such an approach can frustrate meaningful review when the Court must guess at how the ALJ reached its conclusions. *Mascio*, 780 F.3d at 638. To that end, Plaintiff faults the ALJ for failure to explain how summary review of the medical records supports his conclusions. (ECF No. 11). Specifically, Plaintiff points to the ALJ's conclusion that Plaintiff "could concentrate, persist, and maintain pace for 2 hours at a time." *Id.* (citing Tr. 19). To that end, Plaintiff relies on *John A. v. O'Malley* in support of the proposition that such an RFC determination constitutes reversable error. *John A. v. O'Malley*, Civil No. 23-905-CDA, 2024 WL 1465925, at *3 (D. Md. Apr. 4, 2024). There, this Court recognized when, as here, the ALJ determines that a plaintiff has a moderate limitation in concentration, pace, and persistence ("CPP"), "[a]n ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations." *Id.* (citing *Mascio*, 780 F.3d at 638). There, the plaintiff also had moderate CPP limitations, but the ALJ purportedly accounted for those limitations by

> (1) restricting Plaintiff from "work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others)" and (2) limiting Plaintiff to "perform[ing] work activities for up to 2 hours at a time"—a limitation that the ALJ determined could "be accommodated with normal breaks.

*Id.* (citations omitted). However, "the ALJ did not explain how either of these limitations were

intended to address [the plaintiff's] moderate CPP limitations." *Id.* Accordingly, the Court concluded that the lack explanation "left [the Court] to guess" how the production-pace restriction of "working in two-hour increments accommodates [the plaintiff's] moderate CPP limitations." *Id.* at *4. Similarly, in *Lee v. Berryhill*, this Court remanded a case for further proceedings when the ALJ concluded a plaintiff could function at "90 percent of the efficiency of an unimpaired worker due to her symptoms, including her ability to maintain focused attention," while also recognizing that the plaintiff had "moderate difficulties in maintaining concentration, persistence, or pace." *Lee v. Berryhill*, Civil No. TMD 15-3307, 2017 WL 3007068, at *8 (D. Md. Jul. 14, 2017). In support of her RFC determination, the ALJ relied on several medical opinions that characterized the plaintiff's capabilities to varying degrees of severity.[3] *Id.* Ultimately, this Court concluded that the ALJ "failed to explain how this evidence translated into a determination that [the plaintiff] would be off task 10% of the time." *Id.* The Court there cited to *Lobbes v. Colvin*, in support of the proposition that failure to explain why the facts equated to a 10% reduction "as opposed to the 20% reduction [the ALJ] contemplated (or, for that matter, any other number)." *Id.* (citing *Lobbes v. Colvin*, No. 4:13-cv-RLY-WGH, 2014 WL 1607617, at *20 (S.D. Ind. Apr. 22, 2014)). Thus, the Court reversed the decision and remanded the case for further proceedings. *Id.*

Having carefully reviewed the record, the Court is persuaded that the ALJ's narrative warrants remand. As Plaintiff points out, the RBC indicates Plaintiff "could concentrate, persist, and maintain pace for 2 hours at a time and manage himself and adapt to routine changes in the workplace," but does not elaborate upon how that percentage was calculated. (Tr. 19). Like in *John A.*, the ALJ failed to explain how the evidence—evidence he concluded shows multiple moderate limitations—translates into a determination that Plaintiff would be able to concentrate, persist, and maintain pace for only two hours at a time. *John A.*, 2024 WL 1465925, at *3; *see also Lee*, 2017 WL 3007068, at *8. Based on the analysis provided, it is unclear how two hours, rather than any other selection, would address Plaintiff's CPP limitations. Plaintiff correctly avers that the RFC determination here "is a naked conclusion, devoid of analysis." (ECF No. 11 at 13).

The Commissioner's arguments to the contrary are unpersuasive. The Commissioner broadly asserts that the ALJ made an appropriate RFC determination because he considered Plaintiff's history with "major depressive disorder, recurrent, severe; post-traumatic stress disorder; and anxiety unspecified." (ECF No. 13 at 16). However, like the ALJ, the Commissioner fails to explain how a two-hour restriction accounts for these limitations. Indeed, mere references to diagnostic information and the RFC analysis considered as a whole do not allow the Court to glean the ALJ's reasoning for why a two hour restriction is appropriate. In the Court's view, the lack of clear reasoning is precisely the problem. *John A.*, 2024 WL 1465925, at *3. Therefore, the ALJ's

---

[3] The ALJ noted that treating sources found Plaintiff to demonstrate good/fair/intact attention, a logical thought process, appropriate thought content, good memory, no psychomotor agitation or retardation, good abstract thought, a cooperative attitude, articulate speech, normal behavior, no psychosis, and no hallucinations or delusions upon examination. R. at 22, 25. The ALJ also cited the opinions of the state agency psychological consultants, who opined that Plaintiff had "moderate limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation." R. at 26 (citing R. at 251-54, 305-08). Dr. Edmunds also opined, however, that Plaintiff "would be expected to perform adequately with structured routine tasks[ ] that require minimal independent decision making, based on history of poor judgment" and could perform "simple tasks on a prolonged basis."

*Lee.*, 2017 WL 3007068, at *8.

RFC determination lacks a logical bridge and warrants remand on that basis.

V.  **Conclusion**

In sum, the Court agrees with Plaintiff that the ALJ and subsequently the Appeals Council inadequately explained Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge